UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STACEY GREENFIELD,

                Plaintiff,

- against -

CADIAN CAPITAL MANAGEMENT, LP, CADIAN FUND LP, CADIAN MASTER FUND LP, CADIAN GP, LLC, CADIAN CAPITAL MANAGEMENT GP, LLC, ERIC BANNASCH, and INFOBLOX INC.,

                Defendants.

**OPINION AND ORDER**

15 Civ. 4478 (ER)

Ramos, D.J.:

        Stacey Greenfield ("Plaintiff") brings this case under Section 16(b) of the Securities Exchange Act of 1934 (the "Exchange Act") to recover on behalf of Infoblox Inc. ("Infoblox") short-swing insider trading profits allegedly earned by Cadian Capital Management, LP, Cadian Fund LP, Cadian Master Fund LP, Cadian GP, LLC, Cadian Capital Management GP, LLC, and Eric Bannasch (collectively "Defendants"[1] or the "Cadian Entities") while statutory insiders of Infoblox.  Before the Court is Defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons set forth below, Defendants' motion is DENIED.

**I.      BACKGROUND**

    **A. Statutory Background**

        Section 16(b) of the Exchange Act imposes liability on statutory insiders who earn short-swing profits from the purchase and sale of securities.  *See* 15 U.S.C. § 78p(b).  "The statute

---

[1] Infoblox is a nominal defendant in this case.

aims to deter insiders from taking unfair advantage of confidential company information to realize short-swing profits on trades in the company's stock." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 122 (2d Cir. 2001) (citation omitted).

Short-swing trading is generally defined as the purchase and sale, or the sale and purchase, of a company's stock within a six-month period. *Id.* at 121. A statutory insider includes not only traditional insiders, such as a company's directors and officers, but also "beneficial owners" of more than ten percent of any class of any equity security of the company. 15 U.S.C. § 78p(a)(1); *See Facebook, Inc. v. Morgan Stanley & Co. LLC*, 986 F. Supp. 2d 544, 550 (S.D.N.Y. 2014). For Section 16(b) purposes, a "beneficial owner" is defined under Section 13(d) to include any "person" who, directly or indirectly, has or shares (1) voting or investment power over and (2) a pecuniary interest in a security. 17 C.F.R. § 240.16a–1(a)(1)–(2); *id.* § 240.13d–3(a)(1)–(2).

"Persons" include corporations, partnerships, associations, joint-stock companies, trusts, funds, or "any organized group of persons whether incorporated or not." 15 U.S.C. § 80a–2(a)(8). Under SEC Rule 16a-1(a)(1), when two or more persons "act as a partnership, limited partnership, syndicate, or other group for the purpose of acquiring, holding or disposing of securities of an issuer," such persons are deemed to be a "group." 15 U.S.C. § 78m(d)(3); 17 C.F.R. § 240.16a–1(a)(1). The shares held by persons in a group are aggregated for the purpose of determining Section 16(b) liability. 17 C.F.R. § 240.16a–1(a)(2). Thus if the aggregate number of shares owned by a group exceeds ten percent, beneficial ownership exceeding ten percent is attributed to each member of the group. *Id.*; *see Rosen v. Brookhaven Capital Mgmt. Co.*, 113 F. Supp. 2d 615, 617 (S.D.N.Y. 2000).

While Section 16 refers initially to the definition in Section 13(d) for the purpose of determining beneficial ownership, the rules further narrow the criteria for beneficial ownership by exempting certain persons and entities.  Specifically, Rule 16a-1(a)(1) "circumscribes the scope of beneficial ownership" by "carving out an exclusion consisting of three interrelated shareholder requirements:  (1) the person or entity must fall into at least one of the "categories of specifically enumerated institutions or persons" which may invest in an issuer's securities provided for in Rule 16a-1(a)(1)(i)-(ix); (2) the person or entity must maintain the issuer's securities "for the benefit of third parties or in customer or fiduciary accounts in the ordinary course of business"; and (3) the person or entity must have acquired the issuer's securities "without the purpose or effect of changing or influencing control of the issuer or engaging in other impermissible arrangements."  *Rosen*, 113 F. Supp. 2d at 622 (citing 17 C.F.R. § 240.16a–1(a)(1)).  If a party meets these three criteria, the shares held by that party are not counted "for purposes of determining ten percent holder status" under Section 16(b).  *Id.*

As to the first requirement, one of the "categories of specifically enumerated institutions or persons" which may invest in an issuer's securities, includes "any person registered as an investment advisor under Section 203 of the Investment Advisers Act of 1940 (15 U.S.C. 80b-3) or under the laws of any state."  17 C.F.R. § 240.16a–1(a)(1)(v).  This is referred to as the registered investment advisor exemption ("RIA Exemption").  Thus if a registered investment advisor manages an issuer's securities for the benefit of third parties, the advisor shall not be considered a beneficial owner of those securities under Section 16(b).

Suit to recover short-swing profits realized by a statutory insider may be brought by the issuer of the securities or by another shareholder on behalf of the issuer. 15 U.S.C. § 78p(b).  Section 16(b) imposes liability without fault, meaning neither unlawful intent nor actual misuse

of inside information is required to compel disgorgement of short-swing profits. *See Magma Power Co. v. Dow Chem. Co.,* 136 F.3d 316, 320 (2d Cir. 1998). For this reason, Section 16(b) has been described as a "blunt instrument," *Magma*, 136 F.3d at 321, "a flat rule taking the profits out of a class of transactions in which the possibility of abuse was believed to be intolerably great," *Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 422 (1972). The Supreme Court has cautioned that because "Congress has so recognized the need to limit carefully the 'arbitrary and sweeping coverage' of [Section] 16(b), courts should not be quick to determine that, despite an acknowledged ambiguity, Congress intended the section to cover a particular transaction." *Foremost-McKesson, Inc. v. Provident Sec. Co.*, 423 U.S. 232, 253 (1976) (quoting *Bershad v. McDonough*, 428 F.2d 693, 696 (7th Cir. 1970), *cert. denied*, 400 U.S. 992 (1971)).

### B. Factual Background[2]

The Cadian Entities are made up, in part, by two investment funds: Cadian Fund LP ("Cadian Fund") and Cadian Master Fund LP ("Cadian Master") (collectively, the "Investment Funds"). Amended Complaint ("Compl."), Doc. 28, ¶¶ 4-5. Cadian Fund is a Delaware limited partnership, and Cadian Master is a Cayman Islands exempted limited partnership. *Id.* The Investment Funds share a general partner, Cadian GP, LLC ("Cadian GP"), of which Eric Bannasch ("Bannasch") is the sole managing member. *Id.* ¶¶ 6, 8.

Cadian Capital Management, LP ("Cadian Capital"), a Delaware limited partnership, serves as the investment manager of the Investment Funds. *Id.* ¶ 3. According to Plaintiff,

---

[2] The following factual background is based on allegations in the Amended Complaint, Doc. 28, which the Court accepts as true for purposes of the instant motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). In addition, it cites documents which are incorporated by reference, *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted), and forms filed with the SEC of which the Court may take judicial notice, *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

Bannasch is also the "principal owner" of Cadian Capital.  *Id.* ¶ 8.  Cadian Capital is an investor in the Funds, owning eleven percent of the capital in Cadian Fund and three percent of the capital in Cadian Master.  *Id.* ¶ 3; Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint ("Defs. Mem."), Doc. 36, at 21.  Cadian Capital, like the Investment Funds, also has a general partner:  Cadian Capital Management GP, LLC ("Cadian Capital GP").  *Id.* ¶ 7.  Bannasch is the sole managing member of Cadian Capital GP as well.  *Id.* ¶ 8.

Plaintiff alleges that between October 22, 2014 and December 9, 2014, the Cadian Entities, acting as a group, purchased and sold shares of Infoblox common stock while collectively beneficial owners of more than ten percent of Infoblox securities.  *Id.* ¶ 27.  Specifically, Plaintiff alleges that Cadian Fund and Cadian Master purchased up to 237,308 shares during the period from October 22, 2014 through December 9, 2014, and sold 226,522 shares during the period from December 9, 2014 through December 31, 2014.  *Id.* ¶ 28.  Forms submitted to the SEC by Cadian Capital, Bannasch, and Cadian Fund indicate that those entities collectively owned 9.7 percent of Infoblox stock on October 22, 2014, 10.4 percent of Infoblox stock on December 9, 2014, and 9.2 percent of Infoblox stock on December 31, 2014.[3]

According to Plaintiff, the Cadian Entities' are all "inexorably intertwined."  Compl. ¶ 16.  Plaintiff alleges that Bannasch is the sole decision maker for each of the Cadian Entities and effected all of their trades in Infoblox common stock.  *Id.* ¶ 15.  Plaintiff further alleges that the Cadian Entities all bear the Cadian name (with the exception of Bannasch), and operate out of the same office with the same employees.  *Id*.  Moreover, the Cadian Entities' SEC filings disclosing their ownership of Infoblox securities were all signed by Bannasch on behalf of

---

[3] *See* Schedule 13G, 10/22/2014, www.sec.gov/Archives/edgar/data/1223862/000091957414007009/d6280484_13g-a.htm; Schedule 13G, 12/9/2014, www.sec.gov/Archives/edgar/data/1223862/000091957414007009/d6280484_13g-a.htm; Schedule 13G, 12/31/2014, www.sec.gov/Archives/edgar/data/1223862/000091957414007009/d6280484_13g-a.htm.

Cadian Fund, Cadian Capital, and Cadian GP. *Id.*, Plaintiff's Memorandum of Law In Opposition to Motion to Dismiss the Amended Complaint ("Pl. Memo."), Doc 39, at 11-12 n.8. Thus, Plaintiff claims that the Cadian Entities are liable as a group for violating Section 16(b) of the Exchange Act by engaging in short-swing trading while statutory insiders. *Id.* ¶ 16.

## II.    LEGAL STANDARD

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter…to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## III.    DISCUSSION

Defendants move to dismiss on the ground that the Cadian Entities are not subject to disgorgement under Section 16(b), because none of the entities were beneficial owners of Infoblox securities, and therefore could not be considered statutory insiders who, as a group, owned more than ten percent of Infoblox stock. *See* Defs. Mem. at 3.

### A. The Complaint adequately alleges that the Investment Funds, their general partner, and Bannasch were beneficial owners of Infoblox stock.

Section 13(d) of the Exchange Act provides that a beneficial owner of a security includes "any person who, directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise has or shares: (1) Voting power which includes the power to vote, or to direct the voting of, such security; and/or (2) Investment power which includes the power to dispose, or to direct the disposition of, such security." 17 C.F.R. § 240.13d–3(a); *see also Egghead.com, Inc. v Brookhaven Capital Mgmt. Co.*, 340 F.3d 79, 83-84 (2d Cir. 2003) (same, quoting Section 13(d)).

With regard to the Investment Funds, Defendants assert that neither Cadian Fund nor Cadian Master were beneficial owners because they delegated their voting and investment power to Cadian Capital, a "legally distinct entity." Defs. Mem. at 13-16. According to Defendants, the Investment Funds are each bound by Investment Management Agreements ("IMAs") entered into with Cadian Capital, which state that "the investment and reinvestment of the capital of [the Investment Funds], including the purchase or sale of any securities . . . shall be exclusively within the control and discretion of [Cadian Capital]." Declaration of Jessica Oliff Daly in Support of Defendants' Motion to Dismiss the Amended Complaint, Doc. 37-3, Ex. C at 1.[4] Defendants assert that because the Investment Funds "explicitly, contractually ceded" to Cadian Capital "all rights and powers associated with beneficial ownership of their securities," the Investment Funds were not beneficial owners of Infoblox stock. Defs. Mem. at 14.

---

[4] Plaintiff asserts that the IMAs may not be considered for purposes of the instant motion, because the contracts were not incorporated by reference in the Complaint. Pl. Memo. at 1 n.8. It is indeed questionable whether the IMAs have been incorporated by reference, but the Court need not decide either way, because consideration of the IMAs does not affect the Court's decision.

The Court recognizes that there is guidance suggesting that a party which has delegated its authority to vote or manage stock to an independent investment advisor shall no longer be considered a beneficial owner of that stock.[5]  However, it is not necessarily the case that a party which has executed a contract purporting to delegate such authority has effectively done so.  *See Greenberg v. Hudson Bay Master Fund Ltd.*, No. 14 Civ. 5226 (DLC), 2015 WL 2212215, *8 (S.D.N.Y. May 12, 2015) (citing 17 U.S.C. § 240.13d–3(a)) ("The regulations contemplate that a purchaser may not avoid Section 16(b) liability simply by delegating voting and investment authority to a third party.").  Indeed, "[a]n entity may be the beneficial owner of securities even when it only *indirectly* shares or possesses voting and investment power."  *Id.* (citing 17 U.S.C. § 240.13d–3(a)) (emphasis added).  In spite of the IMAs, Plaintiff contends that the Investment Funds in fact retained some measure of control over Infoblox stock.

Plaintiff asserts that upon executing the IMAs with Cadian Capital, the two Investment Funds did not effectively delegate voting and investment power to an independent investment advisor, because one individual – Bannasch – controls all three entities.  Compl. ¶ 15 ("Bannasch is the sole decision maker for each of the Cadian Defendants and effected all of their trades in Infoblox common stock.").  Plaintiff substantiates this claim by alleging that Bannasch is the sole managing member of the general partner of the Investment Funds, as well as the sole managing

---

[5] Guidance from the SEC suggests that an entity which "has delegated all authority to vote and dispose of its stock to an investment advisor and which does not retain the right under the contract to rescind the authority granted to the investment advisor within 60 days" need not report as the beneficial owner of the securities.  SEC Div. of Corp. Fin., Compliance and Disclosure Interpretations, Exchange Act Sections 13(D) and 13(G) and Reg. 13D-G Beneficial Ownership Reporting, Q.105.04 (Sept. 14, 2009) (citing SEC Exchange Act Release No. 13291, Example 11 (Feb. 24, 1977)); *see also* Peter J. Romeo & Alan L. Dye, SECTION 16 TREATISE & REPORTING GUIDE, § 2.03[5][f] ("Generally, an entity is the beneficial owner of its portfolio securities where voting and investment decisions are made by the persons who . . . are charged with making those decisions.  The result may be different where the entity delegates voting and investment authority to an unaffiliated third party and does not retain the ability to revoke that authority within 60 days."); *id.* § 9.01[7][c] (noting that a person "could . . . transfer to a . . . partnership in which the person has a pecuniary interest, but no investment or voting control, sufficient securities to allow the person to fall below the ten percent threshold"); Arnold S. Jacobs, THE WILLIAMS ACT – TENDER OFFERS AND STOCK ACCUMULATIONS, § 2:12 (2013) ("A person does not have beneficial ownership when he contracts the investment power and voting power to an *independent* third party.") (emphasis added).

member of the general partner of the Funds' investment advisor. *Id.* ¶ 8. These allegations give rise to the inference that Bannasch is an agent of both the Investment Funds and Cadian Capital.

In *Huppe v. WPCS Intern. Inc.,* 670 F.3d 214 (2d Cir. 2012), the Court of Appeals for the Second Circuit rejected the argument that a limited partner investment fund could avoid Section 16(b) liability by delegating all voting and investment power to its general partner, which in turn delegated voting and investment power to individual persons. *Id.* at 221. Because the investment funds maintained a principal-agent relationship with the individuals, the investment funds were found to retain beneficial ownership of the subject securities for Section 16(b) purposes. *Id.; see also Analytical Surveys Inc. v. Tonga Partners L.P.*, 684 F.3d 36, 51-52 (2d Cir. 2012) (same).[6]

In the instant case, *Huppe* clearly instructs that the Investment Funds could not have absolved themselves of Section 16(b) liability by delegating authority over Infoblox stock to their general partner, Cadian GP. It is unsurprising, therefore, that Defendants attempt to distinguish this case from *Huppe* by asserting that the Investment Funds did not delegate authority to their general partner, but to a third-party, Cadian Capital. Defs. Memo. at 15-16.

---

[6] The Second Circuit explained:

> Under Delaware law, a general partner of a limited partnership is "an agent of the partnership for the purpose of its business, purposes or activities." Del. Code Ann. tit. 6 § 15–301(a); *id.* § 17–403(a) (West 2011). Thus, an act of a general partner "for apparently carrying on the ordinary course of the partnership's business . . . binds the partnership." *Id.* § 15-301(a). Moreover, the general partner of a limited partnership has the authority "to delegate to 1 or more persons the general partner's rights and power to manage and control the business and affairs of the limited partnership, *including to delegate to agents ... of the general partner or the limited partnership.*" *Id.* § 17–403(c) (emphasis added). Here, [the individual defendants] served as agents of the Funds' respective general partners, who delegated to them their "rights and power" to exercise voting and investment control over the securities held by the Funds. Thus, their actions bound the partnerships.

*Huppe*, 670 F.3d at 221.

Yet the very reason the Second Circuit held that an investment fund does not relinquish beneficial ownership when it delegates authority to a general partner is because a general partner, and its individual members, are considered agents of the fund. Consequently, the Court finds little difference between the conduct proscribed in *Huppe* and the Funds' conduct here – in both cases, the funds delegated control over securities to their own agent. The Investment Funds in this case only did so in a more circuitous fashion, by delegating control to a purportedly distinct entity, Cadian Capital, of which their agent, Bannasch, was likewise an agent.

In their briefing, Defendants conspicuously fail to grapple with, let alone acknowledge, Plaintiff's allegation that Bannasch is an agent of both the Investment Funds and Cadian Capital.[7] When confronted with this fact at oral argument, Defendants responded that principals, such as Bannasch, "wear different hats," and thus Bannasch's role as an agent of the Investment Funds is distinct from his role as an agent of Cadian Capital. Oral Argument Transcript, July 21, 2016 ("Tr."), Doc. 52, at 23:14-23:24. Consequently, Bannasch's status as an agent of both the Funds and Cadian Capital should have no bearing on what was otherwise an effective transfer of authority to an independent investment advisor.

Whether or not this theory is sound, the Court finds that Plaintiff's allegations at the very least raise the inference that the Investment Funds and Cadian Capital are controlled by the same person – Bannasch – and that therefore the Investment Funds retained control over Infoblox securities. Plaintiff has thus plausibly alleged that the Investment Funds were beneficial owners of Infoblox shares for the purpose of Section 16(b) liability. Correspondingly, the Court finds

---

[7] While Defendants concede that Bannasch is the sole managing member of Cadian Capital's general partner, Cadian Capital GP, they make no mention of Bannasch being the sole managing member of the Investment Fund's general partner, Cadian GP.

10

that Plaintiff has sufficiently pleaded that Bannasch and Cadian GP, as agents of the Investment Funds, were also beneficial owners of Infoblox securities.  *See Huppe*, 670 F.3d at 222.

### B. The Complaint adequately alleges that Cadian Capital and its general partner were beneficial owners of Infoblox Stock.

The Court further finds that Plaintiff has plausibly alleged that Cadian Capital was a beneficial owner of Infoblox securities.  Defendants assert that Cadian Capital, a registered investment advisor, is exempt from Section 16(b) liability under the RIA Exemption.  Defs. Memo. at 18.  However, the Court finds that Plaintiff's allegations permit the inference that Cadian Capital did not hold Infoblox stock "for the benefit of third parties," as required by the RIA Exemption.  Indeed, Cadian Capital directly owns capital in each of the Investment Funds, holding eleven percent of the capital in Cadian Fund and three percent of the capital in Cadian Master.

Defendants claim that there is no authority suggesting that the RIA Exemption does not apply to an investment advisor that owns an interest in the funds it manages.  Defs. Memo. at 20. Defendants further assert that it is common practice for hedge funds to invest in their own client funds to earn the trust of investors.  Therefore to disqualify investment advisors from the RIA Exemption based on this practice would, according to Defendants, effectively disqualify all hedge funds from the exemption – a step that the SEC has decided against taking.[8]

---

[8] In 1989, before the SEC established the RIA Exemption, it sought comment on whether to exclude entities such as hedge funds from the exemption.  *See* Ownership Reports and Trading by Officers, Directors and Principal Security Holders, SEC Release No. 34-27148, 54 Fed. Reg. 35667, at *35670 (Aug. 29, 1989).  Ultimately, the SEC adopted the RIA Exemption without a carve out excluding hedge funds.  While it may be true that the SEC decided against excluding hedge funds from the RIA Exemption, the Court notes that Defendants have not provided any evidence suggesting that the SEC intended for the exemption to cover hedge funds that invest in their own client funds. Indeed, it could be that the SEC chose not to bar hedge funds from the exemption because it found no reason why hedge funds could not qualify for the exemption *so long as* they did not invest in their own client funds.

Yet Defendants fail to consider the plain language of the statute, which expressly states that in order to qualify for the RIA Exemption, a registered investment advisor must hold the issuer's securities "for the benefit of third parties." It is clear that when an investment advisor owns an interest in the funds that it manages, it derives some benefit from the investment choices it makes. Recognizing this fact, Defendants concede that there must be *some* limit on the amount of capital that an investment advisor can hold in a particular fund before it can no longer be considered to be managing that fund's securities "for the benefit of third parties."[9]

For purposes of the instant motion, the Court need not decide precisely where that limit lies. Rather, it need only evaluate whether Cadian Capital's stake in the Investment Funds permits the inference that Cadian Capital was managing the Funds' securities for its own benefit. The Court finds that it does, particularly given Plaintiff's additional allegations that Bannasch was both the control person of Cadian Capital as well as the sole beneficiary of the trades he effected in Infoblox stock on behalf of the Investment Funds. The Court concludes, therefore, that Cadian Capital does not qualify for the RIA Exemption. Consequently, Cadian Capital as well its general partner Cadian Capital GP must be considered beneficial owners subject to liability under Section 16(b).

### C. Plaintiff has adequately alleged that the Cadian Entities engaged in short-swing trading as a "group," which owned more than ten percent of Infoblox stock.

Having found that each of the Cadian Entities may be considered beneficial owners of Infoblox stock, the Court next considers whether the allegations plausibly indicate that the

---

[9] THE COURT:  Is there any limit, either by regulation or case law, on how much of a stake [a registered investment advisor] can have in a fund?
DEFENDANTS:  There is not, your Honor, but obviously there has to be some measure of funds that are managed for third parties. And by saying that, I'm not suggesting that if you had a situation, which obviously we do not here, where a manager had -- 85 percent of the funds were not third parties, perhaps then we would, at minimum, have a conversation whether in fact that comports with the intent.  Certainly if you had a de minimis amount that was in here because you were looking to skirt Section 16, so maybe .5 percent or something, that would be a different story. Tr. at 12:18-13:4.

12

entities operated as a group. Under SEC Rule 16a-1(a)(1), a group is found where two or more persons "act as a partnership, limited partnership, syndicate, or other group for the purpose of acquiring, holding or disposing of securities of an issuer." 15 U.S.C. § 78m(d)(3); 17 C.F.R. § 240.16a–1(a)(1). If the aggregate number of shares owned by a group exceeds ten percent of an issuer's securities, beneficial ownership exceeding ten percent is attributed to each member of the group. 17 C.F.R. § 240.16a–1(a)(2); *see Rosen*, 113 F. Supp. 2d at 617.

Plaintiff has made sufficient allegations that the Cadian Entities have engaged in group conduct. According to Plaintiff, the Cadian Entities are "inexorably intertwined." Bannasch is the sole decision maker for each of the Cadian Entities and effected all of their trades in Infoblox common stock. The Cadian Entities operate out of the same office with the same employees. Moreover, the Cadian Entities' SEC filings disclosing their ownership of Infoblox securities were all signed by Bannasch on behalf of Cadian Fund, Cadian Capital, and Cadian GP. These allegations lead to the reasonable inference that the Cadian Entities operated as a "group for the purpose of acquiring, holding or disposing of" Infoblox securities. *See Donoghue v. Genomica Corp.*, No. 02 Civ. 110 (LAP), 2003 WL 1609191, *3 (S.D.N.Y. March 7, 2003). Consequently, the shares held by each of the Cadian Entities are aggregated pursuant to SEC Rule 16a-1.

That the shares held by the Cadian Entities collectively exceeded ten percent of Infoblox stock when the Entities allegedly engaged in short swing trading is not disputed by Defendants, and is substantiated by forms submitted to the SEC by Cadian Capital, Bannasch, and Cadian Fund. These forms indicate that the Cadian Entities owned 9.7 percent of Infoblox stock on October 22, 2014, 10.4 percent of Infoblox stock on December 9, 2014, and 9.2 percent of Infoblox stock on December 31, 2014. Plaintiff alleges that the short-swing trades took place between October 22, 2014 and December 9, 2014. The Court thus finds that Plaintiff has

plausibly alleged that each of the Cadian Entities violated Section 16(b)'s prohibition against short-swing insider trading.

## IV.  CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is DENIED.  The parties are instructed to appear for a status conference on **October 18, 2016 at 10:00 AM**.  The Clerk of the Court is respectfully directed terminate the motion, Doc. 35.

It is SO ORDERED.


Dated:   September 30, 2016
         New York, New York

                                                        _____
                                                        Edgardo Ramos, U.S.D.J.